## Case No. 321a.

### AMERICAN WOOD-PAPER CO. v. GLEN'S FALLS PAPER CO.

[4 Fish. Pat. Cas. 561;[1] 8 Blatchf. 513.]

Circuit Court, N. D. New York. June, 1871.

LAW—RETROSPECTIVE LAWS—VACANCIES IN GOVERNMENT SERVICE—TIME AN ACT TAKES EFFECT—DATE OF A DECISION—PROVISIONAL JUDGMENT.

1. The act of July 23, 1868, "to authorize the temporary supplying of vacancies in the executive departments," applied as well to existing as to future vacancies caused by death or resignation.

2. A vacancy existed in the office of commissioner of patents at the time of the passage of the act, and the chief clerk was, by virtue of section 2 of the act of 1836, acting commissioner. The act of 1868 contained a proviso that "in case of the death, resignation, absence, or sickness of the commissioner of patents, the duties of said commissioner * * * shall devolve upon the examiner in chief in said office, oldest in length of commission." Held, that this act, from the time it took effect as a law, operated to deprive the chief clerk of the patent office of power and jurisdiction to extend a patent.

3. The date of a decision is the time when it is finally settled and approved, and ready to be promulgated.

4. The idea of a judgment or decision, in its nature judicial, being made provisionally, while the question whether any or what judgment should be pronounced, was kept open to await argument, would be a novelty.
[Cited in Re Boston, H. & E. R. Co., Case No. 1,678.]

5. Whether the making of the decision which is indorsed upon the file wrapper of an application for an extension, even though it be deemed to establish the right of the applicant to an extension, is the official act which operates as a legal extension of the patent, quaere.

6. An act of congress, depriving the chief clerk of authority to act as commissioner of patents, bore the signature of the president, and the words, "approved July 23, 1868." It was transmitted to the office of the secretary of state and received there about four o'clock in the afternoon of July 24. Between the hours of seven and eleven o'clock in the evening of the 24th, the chief clerk, acting as commissioner, signed the order for the extension of the patent in question. Held, that under any hypothesis, as to the time when the act of congress took effect, the order of the chief clerk was a nullity.
[Cited in U. S. v. Chong Sam, 47 Fed. 883.]
[See The Ann, Case No. 397.]

7. Some inquiries suggested as to the time when an act of congress takes effect.

[8. Cited in Atwood v. Portland Co., 10 Fed. 284, as an instance in which a bill was upheld, and an accounting decreed although the patent had expired before the decree was rendered.]

[In equity. Bill by the American Wood-Paper Company against the Glen's Falls Paper Company for an accounting, and for an injunction restraining the infringement of patent No. 17,387, and reissues Nos. 1,148 and 1,449 of patent No. 11,343. Decree for plaintiff. American Wood-Paper Co. v. Fibre Disintegrating Co., Case No. 320. On rehearing the decree was for the plaintiff, except as to the injunction prayed for.

[The circumstances under which the rehearing was granted, and the facts involved, are fully set forth in the following statement of the case prepared by the court:] "This suit was brought in 1867, to restrain the infringement, by the defendant, of certain patents held by the complainant as assignee, and especially a patent granted to Marie Amedie Charles Mellier, for fourteen years from August 7, 1854, and which having expired pending this suit, was, by a supplemental bill, alleged to have been duly extended on July 24, 1868, for the period of seven years from the expiration of the term thereof. Upon the hearings of the cause, upon the pleadings and proofs, a decree of this court is made, at the June term of this court, in 1870, sustaining the title of the plaintiff, under the patent and the extension thereof, ordering an injunction and an account of profits, etc., with costs, against the defendant. At that time the counsel for the defendant (Mr. Tiffany) was not aware of the provisions of section 3 of an act of congress, passed in July, 1868, which is now claimed to render the extension

[1][Reported by Samuel S. Fisher, Esq., and here reprinted by permission.]

of the Mellier patent wholly void, and the attention of the court was not called to that act on the hearing, nor until counsel obtained information thereof, after the entry of the decree. At the next term, to wit: the October term (in December as of October term), the defendant having theretofore obtained a stay of proceedings, applied to the court for a rehearing, and the application was granted, with leave to each party to produce further proofs in relation to the time of the passage of the act of congress, and to the time when the extension of the patent was made. Upon such further proofs the case has been heard, and is now to be decided. By section 2 of the act approved July 4, 1836, (5 Stat. 117,) a chief clerk of the patent office is to be appointed, "who, in all cases during the necessary absence of the commissioner, or when the said principal office shall become vacant, shall have the charge and custody of the seal and of the records, books, papers, machines, models, and all other things belonging to the said office, and shall perform the duties of commissioner during such vacancy."

In January, 1868, by the resignation of the commissioner of patents, a vacancy in the office was created, and, by virtue of the act above referred to, A. M. Stout assumed the performance of the duties of commissioner, and continued to act as commissioner down to July 24, 1868, and including that day. Chapter 227 of the Acts of 1868, entitled "An act to authorize the temporary supplying of vacancies in the executive departments," contains a proviso, "that in case of the death, resignation, absence, or sickness of the commissioner of patents, the duties of said commissioner, until a successor be appointed, or such absence or sickness shall cease, shall devolve upon the examiner in chief, in said office, oldest in length of commission;" and by section 4 of the act it was enacted, "that all acts heretofore passed on the subject of temporarily supplying vacancies in the executive departments * * * and all laws inconsistent with the provisions of this act be, and the same are, hereby repealed." This enactment bears the signature of the president, with the words, "approved July 23, 1868." 15 Stat. 168, 169.

On what is called the file wrapper of the papers relating to the extension of the Mellier patent is indorsed: "July 24, 1868. It is ordered that this patent be extended for seven years from date of expiration (no argument filed for the contestants). Written opinion to be filed. A. M. Stout, Acting Commissioner." And a certificate of extension is in evidence signed by "A. M. Stout, Acting Commissioner," bearing date July 24, 1868, which recites that he "did on that day decide that the said patent ought to be extended," and proceeds: "Now, therefore, I, Alexander M. Stout, acting commissioner of patents, by virtue, etc., * * * do renew and extend said patent, and certify that the

same is hereby extended, for the term of seven years from the expiration of the first term, viz: from August 7, 1868; which certificate, being duly entered of record in the patent office, the said patent has now the same effect in law as though the same had been originally granted for the term of twenty-one years. In testimony," etc. The extension of patents in certain cases was provided for by section 18 of the act of 1836, above referred to, and although the power of extending patents was vested in the commissioner by the act of May 27, 1848, (9 Stat. 231,) the provisions of the said section 18 are still deemed important. It provides that if it appear to the board thereby constituted that it is just and proper that the term of the patent should be extended * * * "it should be the duty of the commissioner to renew and extend the patent, by making a certificate thereon of such extension, for the term of seven years from and after the expiration of the first term, which certificate, with a certificate of said board of their judgment and opinion aforesaid, shall be entered of record in the patent office; and thereupon the said patent shall have the same effect in law as though it had been originally granted for the term of twenty-one years."

Proofs were produced, on the part of the plaintiff, tending to show that a contest had been had before the acting commissioner, and a report on the subject was received from the examiner. adverse to an extension of the patent, on July 20, 1868, and an ex parte hearing had thereupon on that or the following day, but the case awaited the appearance and filing or presentation of an argument by the contestants who had been active in resisting the extension, and the testimony of the acting commissioner, Stout, expresses a strong belief in these terms: "I feel sure I read the evidence * * * on or before July 20, and then made up my mind that I would grant the extension, unless my mind should be changed by some other evidence or argument than such as I had seen." * * * "I have a strong conviction, with scarcely a doubt, that I indorsed my order for the extension on that day as it now appears, except that it bore date July 20, instead of the 24th, and that I held the case up for the chance of a claim to be heard on the part of the contestants, or to meet the chance of the counsel on the side of the affirmative appearing and claiming to be heard; and on the 24th, I made a figure 4 over the 0, so that it would appear to have not been decided till that day, but I cannot state this positively, because I can not distinctly call to mind the doing of these two acts." Other of his testimony shows that he was aware of the pendency of the bill of July, 1868, above cited, and of the probability of its becoming a law, and of his ceasing to hold the position of acting commissioner, and he says: "As I had made the decision, I wanted

it to stand subject to the coming in of the contestants, as before stated; the indorsement having been made, the patent would be extended, unless I should change it." This expectation that an argument from the contestants would be presented at a future day, was indicated further by some of the proofs originally taken in the cause, but the witness testifies with much positiveness that he actually made the said order on the file wrapper before July 25, 1868. The plaintiff also gave evidence tending to show that the act of congress in question remained in the hands of the president until the afternoon of July 24, and was then sent by him to the office of the secretary of state, and there filed, at or not long before four o'clock of that day, the office hours at that office then being from nine o'clock A. M. to four o'clock P. M.

The defendant, on the other hand, has produced testimony tending to show that the indorsement on the file wrapper of the order "that the patent be extended for seven years, etc.," was not delivered or made final by the acting commissioner until the evening of the 24th of July, after seven o'clock, and that until that time the subject of the extension was held open by the acting commissioner, and was the subject of actual discussion, and until then undetermined. That the certificate of extension was not in fact drawn and signed until after that day. And that neither the decision of the acting commissioner nor the certificate of extension were entered in the records of the patent office until on or after July 25. The defendant claims that by force of the act of July, 1868, all power of A. M. Stout, chief clerk, to act as commissioner, ceased on July 23, 1868, the day of the date of the signature of the president of the United States to that bill. That on the approval of an act of congress by the president it becomes a law, citing article 1, § 7, of the constitution of the United States. Marbury v. Madison, 1 Cranch, [5 U. S.] 137; In re Welman, 20 Vt. 653; U. S. v. Williams, [Case No. 16,723;] Arnold v. U. S., 9 Cranch, [13 U. S.] 104; Matthews v. Zane, 7 Wheat. [20 U. S.] 211; Gardner v. The Collector, 6 Wall. [73 U. S.] 499. That the date of the approval of the bill by the president is that date by himself thereto affixed, or at all events, that date is prima facie evidence that he did on that day approve and sign the bill. And there is in this case no evidence to the contrary. That, even if it were conceded that an act took effect from the reception thereof from the president by the secretary of state, the act did take effect on the 24th of July on the plaintiff's own showing. And that the law recognizes no fraction of a day, and therefore the act is to be deemed in full operation during the whole of that day, and whatever was done by Stout, as acting commissioner, on the 24th of July, was without authority and void. That, in

fact, if fractions of a day can be taken into account, whatever Stout did touching the extension of this patent on the 24th of July was done after the act, approved and signed by the president, had been received from him, and filed in the office of the secretary of state. That nothing done by Stout, before the 24th of July, was an extension of the patent, or had any legal operation. That his mental conclusion to extend the patent, if cause to the contrary was not shown, or his provisional indorsement on the file wrapper—if indeed the belief he expresses in his testimony be assumed to be well founded—can not have any legal effect to extend the patent. And that the order itself made on the file wrapper was a mere decision that the patent ought to be extended, and though made on the 24th of July, was not, per se, a legal extension of the patent. That even if it were conceded that it would have been the proper ground of an extension to be made, upon which, if his acts done on the 24th of July are recognized as valid, the officer succeeding to the duties of commissioner might legally have extended the patent, the mere decision or order did not extend the patent. And hence the certificate of extension made after that day by Stout has no validity. That by terms of the statute, the certificate of extension is to be indorsed on the patent, and such certificate and the decision are to be entered of record; and it is "thereupon," and not until then, that the patent is as matter of law extended. That if the operation of the act of 1868 did not work a total repeal of section 2 of the act of 1836, so far as that section gave to the chief clerk the powers of the commissioner when he was absent, or the principal office vacant, and therefore if there were neither commissioner nor an examiner in chief, such clerk might act; such qualification of the act of 1868 can not avail the plaintiffs here, because there was at all times during the 24th and 25th of July, and afterward until a commissioner was appointed, an examiner in chief, and the oldest of such examiners in term of office, in actual attendance at the patent office.

For the plaintiff it is insisted: "That the act of July, 1868, did not operate to repeal, but only to modify for the future the law of 1868, by interposing certain other officers, who might act as commissioner, and so render a total vacancy less probable. That whatever its operation, it was wholly prospective, and it could have no effect until a commissioner of patents should be appointed, and death, absence, resignation, or sickness should thereafter occur, and therefore the powers of the chief clerk, under the act of 1836, remained unimpaired until a commissioner was appointed. That the act of granting an extension was judicial in its character, and therefore all the presumptions are in favor of its validity. Rubber Co. v. Good-

year, 9 Wall. [76 U. S.] 788, 797, 798; Kempe's Lessee v. Kennedy, 5 Cranch, [9 U. S.] 173; Polk's Lessee v. Wendal, 9 Cranch, [13 U. S.] 98; Ex parte Watkins, 3 Pet. [28 U. S.] 193; Bagnell v. Broderick, [13 Pet. (38 U. S.)] 450; Voorhees v. Bank of U. S., 10 Pet. [35 U. S.] 449; Grignon's Lessee v. Astor, 2 How. [43 U. S.] 319; Minter v. Crommelin, 18 How. [59 U. S.] 87. That the acts of Stout as acting commissioner on July 24, 1868, are valid acts. He was then in the rightful discharge of the duties of commissioner. That the date affixed by the president to his approval, July 23, 1868, is not conclusive, the affixing of a date by the president not being required by law. That the approval of the president has no operation so long as he retains the bill in his possession. He could legally strike it out if he finally determined to withhold his approval. Such approval does not take effect until it is promulgated, and the appropriate and only mode of giving it final effect is the delivery thereof to the secretary of state, on the reception of which, and not before, the act became the law of the land. That the time a bill is received from the president is in law the time when approval by him becomes effective, and is to be resorted to whenever the time a law goes into operation becomes the subject of inquiry. Gardner v. The Collector, 6 Wall. [73 U. S.] 499. That otherwise a statute might have operated upon the acts and rights of citizens, and affect them civilly and criminally, while the act is in the president's drawer, and knowledge of its existence as the law of the land impossible. That whenever the rights of the citizen are to be affected by an inquiry into the precise time a law took effect, it is not to be adjudged that it was in force during the whole of the day on which it became a law, but parts of a day are to be recognized and considered by the courts of the United States. In re Ankrim, [Case No. 395;] In re Richardson, [Id. 11,777;] In re Wynne, [Id. 18,117.] That it is for the defendant to show affirmatively that the granting of the extension was after the act was received by the secretary of state, and that the power and jurisdiction of Stout to act as commissioner had ceased when he made the order for the extension, and this has not been done. That the plaintiff has shown affirmatively that the act was not received by the secretary of state until four o'clock of the 24th of July, and that the defendants have not shown that the order for the extension was made after that hour. That Stout was in the actual and legal performance of the duties of commissioner until Hodges, the senior examiner, assumed their discharge on the 25th of July; and the defendants have not shown that the order for the extension and the certificate of extension were not made and signed by Stout, and the record thereof made before Hodges assumed the duties of acting commissioner.

"That the rights of the patentee were complete and finally vested when the order for the extension was made. That in law the record is taken to be made at and from the moment when the duty to record the extension arose, whether the actual writing of the record in the book of record was done on that or on a subsequent day."

Thomas A. Jenckes, for complainant.
Samuel S. Fisher, for defendant.

WOODRUFF, Circuit Judge. A rehearing was ordered in this case for the mere purpose of bringing under consideration the effect of the act of July, 1868, entitled "an act to authorize the temporary supplying of vacancies in the executive department," upon the rights of the parties. It was not intended to consider further the questions of fact or law which were raised and discussed on the original hearing of the cause upon the pleadings and the proofs then taken. On the face of the statute, as it appears in the authorized publication thereof, and as it now seems on the act as received from the president of the United States by the secretary of state, it appeared that the act was approved on July 23, 1868, and prima facie at least, it was to be deemed to have become operative as the law of the land on that day. And, as the proofs then stood, the extension of the patent on which the plaintiff relies in his supplemental bill was made after that date, and when, by force of the act, as construed by the defendant, the power of the chief clerk of the patent office by whom the extension was made had ceased. If the alleged extension was invalid, then, although the original patent to Mellier was valid, and the defendant was found to have infringed it, the plaintiff was not entitled to an injunction on the final decree, because the original patent expired on August 7, 1868, and the plaintiff was not entitled, by reason of the defendant's infringement, to an account of profits, except so far as profits arose out of a use made of the patented invention prior to the last-named day.

On the application for a rehearing, the plaintiff not only insisted that the act of July, 1868, did not (even though it became a law on the 23d of July) impair the validity of the extension of the patent, but the right was claimed to produce proofs from which it would result, by legal consequence, that the act did not take effect as law until July 24, 1868; that the authority of the chief clerk was in full force when the extension was made, and that the extension was in every view of the subject valid. It seemed to me just to permit both parties to produce further proofs to the end that the actual facts might appear, and that all legal questions, whether of the propriety of inquiring beyond what appeared on the act itself as the date of approval, or of the effect of the facts developed on such inquiry, might be raised and appear by the record to have been presented for consideration. Numerous in-

teresting and delicate questions of great importance to these parties, and some of them of moment to the citizens of the United States, are now suggested. Among them are the questions, whether an act of congress becomes the law of the land eo instante the president puts his name thereto; whether during the ten days, for which by the constitution he is at liberty to retain a bill for consideration, the bill is so far under his control that, notwithstanding he may have first affixed his signature, he may, if subsequent information or subsequent reflection lead him to disapprove, erase such signature and return the bill with his objections; whether if he have affixed his name at his residence or in the executive chamber, and the bill remains in his drawer, it is nevertheless operative as a law; whether during the whole number of ten days it is entirely under his control, so that he may approve or disapprove, his signature only operating when he surrenders the possession of the bill; whether the act of September 15, 1789 (1 Stat. 68), providing that whenever a bill having been approved and signed shall become a law or take effect, it shall forthwith thereafter be received by the secretary of state from the president, and, as soon as conveniently may be, published, has or can have any effect to determine when the president has lost control of the question, or when his approval has legal operation (as matter of appropriate legal evidence); or whether such act imports, or can constitutionally import, that delivery to the secretary of state must be made before the law can operate; and whether any promulgation whatever is necessary to make an act of congress or the president's approval thereof operative? These questions, or multiplied forms of substantially the same question, are of great interest. So, also, whether when a statute takes effect on a given day, it is to be deemed in operation during the whole of that day, so as to affect the validity of acts done on the same day but at an hour prior to the actual enactment; and whether the court may recognize fractions of a day in declaring the effect, and inquire at what hour of the day the statute became operative; and if so, what are the sources of evidence; if the statute takes effect from the signing by the president, may the hour at which his signature was affixed be proved by parol, and the effect of the statute so be made to depend upon proofs necessarily somewhat unreliable.

These and other kindred questions discussed herein are of general interest. In more immediate relation to the subject of the extension of patents, it is of some interest to inquire what in law amounts to an extension. Is it the written decision or order of the commissioner, or is it the executed certificate of extension, or is the record of such decision and certificate an essential prerequisite? My conclusions upon the case, as now developed, render it unnecessary that I should express an opinion upon these various questions above stated. The legal effect of the act of 1868 upon the rights of the parties, if it was in operation when Mr. Stout, chief clerk, made the extension; whether any thing done before July 24, 1868, operated as a legal extension of the patent; and whether, assuming that the plaintiffs are right in their claim that the act had no legal operation until the president had signed and delivered the bill to the secretary of state, the extension was made after that time, are questions which, whatever may be my opinion on the other questions, may be decisive of the present case.

On these last-named questions I state my conclusions very briefly.

1. The act of 1868, from the time it took effect as a law, operated to deprive the chief clerk of the patent office of power and jurisdiction to extend a patent. Looking to the object of the act, and the repeal of all existing acts on the subject of supplying vacancies, it is to my mind clear that the act, in all its principal provisions, must apply to existing vacancies caused by death or resignation. It embraces heads of departments, chiefs of bureaus, and other officers thereof, and if the authority conferred did not reach existing vacancies, then the repeal of all prior laws on the subject of temporarily supplying vacancies, left such vacancies unfilled, and without authority in any person to perform the duties, and the functions of the office could be discharged by no one. The reason for the enactment applied with the same force to an existing vacancy as to one which should thereafter occur. The words, "in case of death, resignation, absence, or sickness" of an officer, are as appropriate to describe existing facts as those which may occur in the future, and no reason occurs to me for confining it to the latter class. It may not be of much importance, but it is not impertinent to observe that this construction of the act was contemporaneously given to it by congress and by the patent office itself.

2. It is entirely clear that upon the pleadings and the proofs, in this case, it must be held that nothing done by Mr. Stout, the chief clerk, as acting commissioner, before the 24th of July, operated as a legal extension of the patent. The plaintiff in his bill relies upon an extension of the patent made on the 24th of July, and he has not averred any thing as a ground of claim that any prior act, decision, or adjudication gave him any right beyond the term of the original patent. The proofs place him in no different situation if he were not concluded by the pleadings; the certificate of extension relied upon bears date on the 24th of July, and was certainly not executed before that day. I think the proofs show that it was signed after that day. The decision or order entered upon the file wrapper (as the disposition of the contest touching the extension), as finally settled and approved by Mr. Stout, as acting

commissioner, bears the deliberate and final date of the 24th July. The apparent endeavor to give it earlier effect, through the testimony of Mr. Stout to his belief or conviction that he wrote it on the 20th, having made up his mind to grant the extension unless his mind should be changed, will not avail. It is manifest, from the proofs in the cause, that there had been a vigorous contest, and that the acting commissioner expected to receive an argument from the contestants. The rules of the patent office provided for it. I have already held in this case that I could not go into any inquiry touching the validity of the patent founded on any irregularity, or failure, to conform to those rules. But this reference to the rules conforms to, and confirms what the witness in substance states, that nothing was done prior to the 24th, which was either understood to be, or was intended to be, conclusive as a decision. The idea of a judgment or decision in its nature judicial, being made provisionally, while the question whether any, or what judgment, should be pronounced, was kept open to await argument, would be a novelty. The entry, if made on the 20th, may have been a minute of views the acting commissioner then entertained; but he says himself that they were not promulgated, and that he did not intend to promulgate them until the 24th, when he thinks he made the date "24th," for the purpose of giving the decision some effect. I add what his testimony fairly imports, that the applicant was almost daily urging a decision; the acting commissioner was waiting for the appearance of the counsel for the contestants, and the final decision was withheld, he "retaining his power over it," until the 24th, when, under the influence of apprehension that his power would cease by force of the act then already passed both houses of congress, and known to have been laid before the president, and a desire to have the extension made, which he thought the applicant justly entitled to, he made his decision final on that day.

3. Having reached a conclusion that the patent was a valid patent; that the defendants are infringers of that patent; having no reason to doubt that the decision of the acting commissioner that the applicant was entitled to an extension was just and proper, I have come to the examination of the question of fact, as to when the extension was actually made, without impulse or possible prejudice unfavorable to the plaintiff. I trust, also, without any impression on my mind unfavorable to a just view of the evidence. If, then, the claims of the plaintiff as to the time when or the event upon which an act of congress becomes operative as the law of the land be conceded, and be fixed at the time when the act is received by the secretary of state, and the extension of a patent be held to create a vested right in the applicant not to be defeated by any retroactive legislation, by legal fiction or

otherwise, even for an hour or other part of a day, the question of fact remains, when was the act in question, with the approval of the president, delivered and received by the secretary of state? And when, in fact, was the patent extended by the chief clerk as acting commissioner. On the first of these questions the proof is entirely convincing, and there is no contradiction to this extent, viz: it was not later than four o'clock in the afternoon. Although one of the witnesses ventures the opinion that the message to the senate. announcing the approval of the bill, did not reach the senate before half-past four, the grounds of his opinion are not very obvious, and if a mere opinion founded on the business done in that body after that message was received, and before five o'clock, is of any moment, I think the inference that it arrived there much better warranted. And the fact that the bill sent by another messenger was filed in the office of the secretary of state on that day, and that the office hours were from nine to four, ought to be deemed to settle that question.

On the other question, it is pertinent to say that I deem it doubtful that the making of the decision which is indorsed on the file wrapper, is the official act which operates as a legal extension of the patent, even though it be deemed to establish his right to such extension. It may be a final decision, and if made while the chief clerk had jurisdiction and power to make it, might perhaps be conclusive upon his successor in the discharge of the duties of commissioner. Whether even the certificate of extension grounded thereon had not such relation back to that decision that it might be signed by such chief clerk after his power had ceased, the same being treated simply as the embodiment of that decision in proper form as evidence of the title of applicant, I express no opinion. Taking all this most favorably to the claim of the plaintiff, when was the decision, in fact, made? The testimony satisfies me, and I must, therefore, find that it was made between seven and eleven o'clock in the evening of the 24th of July. and, therefore, after the act of congress had been approved, signed, and filed in the office of the secretary of state. On the 20th or 21st, Hay (administrator of Mellier), the applicant, had been heard upon the subject of the granting of his application. The matter was kept open to enable the counsel for contestant to be heard under the rules. Those rules contemplated the giving of even more time to the contestants. Hay was nevertheless "almost daily urging a decision." An apprehension had arisen that the act of congress, taking away the power of the chief clerk, would be signed by the president. On that evening, between seven and eleven o'clock, Hay and others were present in the office. Hay had no business there "but to urge the extension of this patent." Mr. Stout was devoting his attention to the

papers in the application for such extension. One of the clerks in the office was present, and read to him some papers connected with the case. He also devoted some attention to another application for an extension of a patent. That he decided adversely to the applicant under the same date, July 24, and as to that it is obvious there was no occasion for further attention if he had already, at an earlier hour of the day, actually made an adverse decision, for that terminated his duties in relation thereto. A rumor reached the office in the course of the evening that the act of congress above referred to had been signed by the president, and some one volunteered to go to the capitol to inquire. One witness thinks he returned with a confirmation of the rumor, but the witness, Pennebacker, testifies that he himself volunteered to go, and went, and was told that the persons inquired of had no notice of such signing, and that he returned and delivered the message. Mr. Stout is quite positive that he did not know of such signing until the next day. This would leave him at liberty to act in the matter of the extension. And all these circumstances indicate most strongly that it was then and there that his decision was made and intended to be operative and final.

This conclusion renders an opinion upon most of the questions discussed unnecessary, and therefore I do not inquire further whether the act is, as matter of law, to be deemed the law of the land during all the 24th day of July, or on whom is the burden of showing whether the decision was before or after the time at which the bill was filed in the office of the secretary of state, if that be the hour and moment when it took effect. Nor whether the operation of an act of congress shall be made to depend upon evidence in parol to matters lying in the memory of witnesses, and not in the record. Notwithstanding my conclusion, the case may, perhaps, illustrate the uncertainty attending such inquiries touching the law of the land, and often, it may be, when very grave consequences will flow from the opening of such a question to parol proof. It may be argued, with some force at least, that a law enacted by congress, approved and signed by the president, is to be taken as the expression of what is wisest and best, and that if an official act in contravention of its provisions or requirements be insisted upon, he who relies upon such act as valid, should, if he be permitted to divide the day of enactment into portions, show on his part, by very clear evidence, that the official act relied upon preceded the enactment of the law. The plaintiff must have a decree herein in conformity with the former decision, so far as it affirms the validity of the original patent and the infringement thereof, and directs an account of profits down to August 7, 1868, when that original patent expired, but no injunction restraining the de-

fendants in the future use of the invention in question should be granted.

[NOTE. For reference to other cases involving the patents and reissues passed upon in this case, see note to American Wood-Paper Co. v. Fibre Disintegrating Co., Case No. 320.]